**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DOUGLAS NORMAN WARSAW,**

|  |  |
|---|---|
| **Plaintiff,** | **CIVIL ACTION NO. 11-14872** |
| **vs.** | **DISTRICT JUDGE SEAN COX** |
| **COMMISSIONER OF SOCIAL SECURITY,** | **MAGISTRATE JUDGE MONA K. MAJZOUB** |
| **Defendant.** | |

_____/

## REPORT AND RECOMMENDATION

**I.      RECOMMENDATION:**  This Court recommends that Plaintiff's motion for remand pursuant to sentence four (docket no. 11) be denied, Defendant's motion for summary judgment (docket no. 12) be granted, and Plaintiff's complaint be dismissed.

**II.      PROCEDURAL BACKGROUND**

On December 1, 2009 Plaintiff protectively filed an application for child's insurance benefits based on a disability.[1]  (TR 209-15).  Plaintiff also protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on December 1, 2009, alleging disability beginning December 2, 2001.  (TR 194-206).  The claims were denied and Plaintiff filed a timely request for a _de novo_ hearing.  On May 20, 2011 Plaintiff appeared with counsel in Mt. Pleasant, Michigan and testified before Administrative Law Judge (ALJ) Jessica

---

[1]An individual over the age of 18 who is disabled is entitled to child's insurance benefits if his disability began before he attained the age of 22 and he meets certain eligibility requirements. 20 C.F.R. § 404.350.

1

Inouye.  (TR 32-98).  Vocational Expert (VE) David Holwerda also appeared and testified at the hearing.  In a June 15, 2011 decision the ALJ found an established onset date of disability of November 22, 1988, and determined that Plaintiff was not disabled because he retained the ability to perform a significant number of jobs that exist in the national economy.  (TR 11-21).  The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review.  (TR 1-3).

## III.   PLAINTIFF'S TESTIMONY, SCHOOL RECORDS, AND MEDICAL EVIDENCE

### A.   Plaintiff's Testimony

Plaintiff was eighteen years old on his alleged disability onset date of November 22, 1988, and forty years old at the time of his administrative hearing.  (TR 42).  He graduated from high school and participated in special education classes throughout his schooling.  (TR 57).  Plaintiff lives at home with his parents and works at a bar approximately fifteen hours per week where he earns tips and is paid in cash.  (TR 42-44, 79).  During work hours Plaintiff cleans the bar, mops the floor, resupplies ice, moves beer kegs, and carries cases of beer and bottles of liquor for restocking.  (TR 44-45).  He carries the liquor with his right arm and shoulder because his left arm is two inches shorter than his right and has diminished function.  (TR 41, 45, 63-64, 68).  He has worked at the bar approximately twenty years and he works independently without much supervision.  (TR 47, 80-81).

Plaintiff testified that he cleans limousines in the summertime in addition to working at the bar.  He states that during the busy season he cleans limousines seven days a week, sometimes from ten in the morning until six at night.  (TR 47-48).  During the busy season on his limousine cleaning job, he will clean the bar either before he begins or after he finishes washing the limousines.  (TR

48).  In his limousine cleaning position Plaintiff will wash and vacuum the inside and outside of the vehicle and "detail" the vehicle.  (TR 48-49).  He testified that he works twenty to thirty hours per week cleaning limousines, he earns five dollars per hour, and he is paid in cash.  (TR 49).  Plaintiff testified that he performed janitorial services for several employment agencies, he cleaned cars for an automobile dealership, and he worked for a car wash in or around 2001, along with various other short term jobs.  (TR 51-57).  He worked for several months as an agricultural worker picking sugar beets.  (TR 54).  He claims that he is disabled because although he can perform a job correctly he can't work fast enough because his left arm is disabled.  (TR 61-62).

Plaintiff testified that he had a heart attack but he has been released back to work without restrictions and he has not had any difficulties.  (TR 70-71).  He had seizures as an infant but he has not had a seizure since high school.  Plaintiff suggests that he had his first seizure in 1972 when he was approximately two years old, and he had his last seizure in 1984 when he was approximately fourteen years old.  (TR 274).  He does not take any seizure medication.  (TR 78).  He testified that he does not have any side effects from his medications.  (TR 71).

Plaintiff testified that he can carry objects with his left arm but he may need to stop and get a better grip before he continues.  (TR 64).  He claims that he carries two large ten to fifteen pound buckets of ice at the same time, one in each hand.  (TR 45, 64-65).  He can use both hands to cut his food and he can reach overhead with his left arm, but he has difficulty getting a good grip on objects with his left hand.  (TR 65-67).  He testified that he was an athlete in high school on the wrestling, football, and basketball teams, although he did not play an actual football game despite the fact that he practiced with the team.  (TR 68-69).  He testified that he plays pool.  (TR 69-70).

Plaintiff testified that he returns home from his job at the bar around noon when he is not cleaning limousines and he sits in his room all day and watches television. (TR 72). He claims that he does not have any difficulty concentrating on television shows or following the story line. (TR 72). He also talks with friends on the phone and on occasion will meet up with them at the bar. (TR 72). He has no problem taking care of his personal hygiene and he is comfortable interacting with strangers. (TR 77, 82).

Plaintiff testified that he has difficulty learning a job because he forgets how to do it. (TR 62). He testified that he reads the newspaper every day, he can write out a shopping list, shop alone and handle a cash transaction, calculate basic addition and subtraction, and read the measurements on a measuring cup or tape. (TR 57-58, 73, 82). He uses the computer everyday to visits sites like Facebook and Craigslist, and he helps locate cars on Craigslist for his friends to purchase. (TR 73-74). He testified that his back hurts if he sits too long, but he does not have trouble standing, walking, or picking up a piece of paper with either hand. (TR 75). He has better dexterity with his right hand than he does with his left hand but he states that he can pick up a pen with his left hand with some difficulty. He testified that he can lift fifty pounds with his right hand and ten to fifteen pounds with his left hand. (TR 76). He lost his license following a DUI and he is waiting until he saves some money before he gets it reinstated. (TR 59). He testified that he did not have any difficulty taking the driver's education test in the past. (TR 59). He walks to work or gets a ride from friends or on the bus. (TR 59-60).

## B. School Records

An Individualized Educational Plan dated November 7, 1989 shows that Plaintiff was performing at an adequate level especially in mathematics, with an average affective

4

(emotional/social) level, and adequate psychomotor (motor/perceptual) skills except that he needed to improve his handwriting. (TR 305). He had received special education services, including speech, since 1978 and he continued to qualify for special education services as learning disabled through high school. (TR 305).

Stanford Achievement Test results in May 1987 showed that Plaintiff had a comprehension level of grade 4.6, vocabulary at a grade 4.4, spelling at a grade 5.7, English at a grade 3.9, and math at a grade 8.2. In 1985, Plaintiff obtained a verbal IQ score of 77, a performance IQ of 80, and a full scale IQ of 76. The same test in 1988 revealed that Plaintiff had a verbal IQ score of 80, a performance IQ score of 72, and a full scale IQ score of 75. In 1988, he had a word recognition score at a grade level of 3.1, reading comprehension score at a grade 4.5, and math calculation at grade 8.0. His language age equivalent was twelve years, seven months which qualified him for speech therapy. The school psychologist noted that Plaintiff's test results consistently fell within the slow learner classification on intelligence tests dating back to 1975. His strength was in math reasoning. (TR 313). At graduation, Plaintiff ranked eighty-sixth out of a class of one hundred thirty seven students with a grade point average of 2.336. (TR 296).

## C.    Medical Evidence

The undersigned has thoroughly reviewed the medical evidence and will summarize limited portions of the record below. The record shows that Plaintiff has a history of grand mal seizures, back pain, myocardial infarction with successful stent placement, a congenital left arm deformity, and a learning disability. (TR 332-37, 374, 407-10).

On February 3, 2010 Dr. R. Scott Lazzara examined Plaintiff on behalf of the state disability determination service. (TR 332-37). Plaintiff presented with complaints of a history of a learning

disability, epilepsy with no seizures for many years, a congenital left hand deformity, and a history of chronic back pain that he attributed to wear and tear doing maintenance.  (TR 332).  Dr. Lazzara noted that Plaintiff had diminished reaction time with the left hand with mildly diminished dexterity, but he could still use the left hand for manipulative tasks, pushing, pulling and grasping.  Plaintiff could perform his activities of daily living and he reported that he could lift fifty pounds with his left hand.  Dr.Lazzara observed that Plaintiff exhibited a mildly slow mental status, but he was able to answer questions and follow commands.  His immediate, recent and remote memory were intact with normal concentration, and his insight and judgment were appropriate.  (TR 333).  Dr. Lazzara concluded that Plaintiff may have some underlying cerebral palsy mostly involving the left side, but that he was able to do manipulative tasks and his grip strength and dexterity were relatively well preserved.  Dr. Lazarra noted that Plaintiff's lumbar range of motion was somewhat diminished.  He concluded that Plaintiff's primary issue was his learning disability, although his mental affect appeared stable.

Dr. Michael Brady examined Plaintiff and completed a psychiatric/psychological medical report on February 11, 2010 for the state disability determination service.  (TR 339-42).  Dr. Brady noted that Plaintiff's mood was normal, his mannerisms were cooperative, he appeared to be in contact with reality, he indicated a positive self image, his thoughts were spontaneous and well organized, and there was no problem with pattern or content of speech.  (TR 340).  Dr. Brady noted that Plaintiff's emotional reaction was normal, and he was cooperative and attentive throughout the evaluation.  Plaintiff was able to recall five digits forward and four digits backward, recall three of three objects after a three-minute delay, name past and current Presidents, identify five large cities and current famous people, and identify similarities and differences between objects.  Plaintiff could

complete serial sevens to 72 although it took him a long time to complete the task. His judgment was intact. Plaintiff reported that he could maintain self care and complete household chores. Dr. Brady concluded that the results of the mental status examination revealed no abnormalities in mental capacity. He found that Plaintiff's ability to relate to others, including coworkers and supervisors, was good, as was his ability to maintain concentration. His ability to understand, recall, and complete tasks and expectations was not impaired. Dr. Brady determined that Plaintiff was able to perform simple and complex tasks with no major limitations. He assigned a GAF of 88 with a good prognosis. (TR 342).

On April 23, 2011 Plaintiff presented to George Pestrue, Ph.D., licensed psychologist, for an assessment of his intelligence. (TR 450-54). Dr. Pestrue observed that Plaintiff exhibited a spontaneous stream of mental activity, he was oriented to three spheres, his responses to questions were appropriate, his speech in tone/pace/volume was appropriate, and his articulation was clear. On the Weschler Adult Intelligence Scale-IV (WAIS-IV) Plaintiff scored a verbal comprehension index of 68, a perceptual reasoning index of 69, a working memory index of 77, a processing speed index of 81, a full scale IQ of 68, and a general ability index of 65. He concluded that Plaintiff's scores varied from the mild mental retardation range to the borderline range. (TR 451). On the Wide Range Achievement Test-4 (WRAT-4) Plaintiff obtained a word reading score of 68 with a grade level of 3.8; sentence comprehension standard score of 71 with a grade level of 5.7; spelling standard score of 66 with a grade level of 3.1; math computation score of 81 with a grade level of 5.7; and reading composite score of 69. (TR 451). Dr. Pestrue opined that Plaintiff could not work at any job that required minimal reading skills. He found that Plaintiff's general ability index score of 65 placed him clearly in the mild mental retardation range. Dr. Pestrue completed a Mental

Residual Functional Capacity Assessment that found that Plaintiff was markedly limited in his ability to remember, understand, and carry out detailed instructions, maintain concentration for extended periods, and complete a normal workday without interruptions from psychologically based symptoms. (TR 453-54). In all other areas, he concluded that Plaintiff was not significantly limited.

In May 2011, James Troester, a social worker, wrote a letter to Plaintiff's counsel on counsel's request. (TR 455-58). Mr. Troester relied on his recall of his involvement with Plaintiff when Plaintiff was "mid-childhood age." Mr. Troester indicated that he had a series of weekly sessions with Plaintiff at the Bay Area Guidance Center in the Mental Health Building. He could not remember why Plaintiff was referred to him. He recalled that Plaintiff did not want to be in the spotlight, turned his face away and cowered behind his mother in what Mr. Troester concluded was an attempt to conceal facial imperfections. Mr. Troester states that Plaintiff seemed to anticipate criticism and being looked down upon. During the sessions Mr. Troester states that a feeling of equality emerged as Plaintiff became increasingly more relaxed, interacted more, laughed, and did not try so hard to conceal his perceived imperfections. Mr. Troester states that Plaintiff had a speech problem, a visual anomaly, and an intellectual deficit. He suspected that Plaintiff would always need someone to look after his well-being and he believed Plaintiff should qualify for social security disability benefits.

Paul Hardy, a retired special education teacher, wrote Plaintiff's counsel a letter stating that Plaintiff had a great deal of difficulty with learning anything of any complexity, following sequences, drawing conclusions, and forming opinions. (TR 494). Mr. Hardy stated that it was his professional opinion that Plaintiff does not have the ability to hold even a minimal job such as a restaurant or custodial position, he will need to be in some type of full time assisted living for the

8

rest of his life, and he will only have success at any task if he has a supervisor/mentor working with him at all times.

## IV.    VOCATIONAL EXPERT TESTIMONY

The Vocational Expert (VE) testified that Plaintiff's past work as an automobile detailer was classified as medium unskilled work, but light exertional level as performed by Plaintiff, and his past work as a janitor or commercial cleaner was heavy unskilled work and medium as performed.  (TR 88).  The ALJ asked the VE to consider an individual with Plaintiff's age, education, and work experience who requires simple, unskilled, nonproduction work that is routine and repetitive, and that does not require the individual to make decisions or exercise judgment as part of the job.  The individual can lift fifty pounds occasionally and twenty-five pounds frequently with the right hand; up to fifteen pounds occasionally and ten pounds frequently with the left hand, but with the left hand used primarily as an assist only; he should not be expected to perform new tasks, he learns best by demonstration, and there should be no changes in the work environment.  The individual can perform pushing and pulling motions with the upper and lower extremities, although only occasionally with the left upper extremity and with the previous weight restriction.  The individual can perform activities requiring bilateral manual dexterity for both gross and fine manipulation, with handling and reaching, but only occasional gross and fine manipulation with the left upper extremity.

The ALJ continued the hypothetical by stating that the individual should avoid unprotected heights, moving machinery, vibrations, and concentrated exposure to extreme temperatures and humidity.  The individual can perform no crawling, and no climbing of ladders, ropes, and scaffolds, but can perform postural activities and occasional climbing/balancing/stooping/crouching/kneeling.

9

The individual can perform very simple, basic reading, writing, and math, consisting of word reading at the grade level of 3.8, sentence comprehension at a grade level 5.7, spelling at a grade level 3.1, math computation at the grade level 5.7, and reading composition standard score of 69 percent or a ranking of two. (TR 89).

The VE testified that such an individual could perform Plaintiff's past work as an automobile detailer and commercial cleaner. (TR 91). The VE testified that even if the individual was not capable of performing past work, he could perform medium to light work as an industrial cleaner, assembler, and machine tender/operator, consisting of 38,000 jobs in Michigan. (TR 91-92). The VE testified that there would be no jobs available if the individual would be off task or not able to work fast enough up to twenty percent of the time. (TR 92).

## V.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff worked after his alleged onset of disability but his earnings from this work did not rise to the level of substantial gainful activity. The ALJ found that although Plaintiff has not engaged in substantial gainful activity since November 22, 1988, and suffered from the severe impairments of congenital arm deformity, seizure disorder, and a learning disorder, he did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 13-16). The ALJ determined that Plaintiff has no past relevant work but retained the residual functional capacity (RFC) to perform medium work with the following limitations: (a) lift and carry fifty pounds occasionally and twenty-five pounds frequently with his right arm; (b) lift and carry fifteen pounds occasionally and ten pounds frequently with his left arm; (c) use his left hand mostly as an assist or for incidental lifting; (d) perform pushing and pulling motions with his upper and lower extremities, but limited on the left to occasionally within the weight restriction; (e)

perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching, but he can perform gross and fine manipulation only occasionally with his non-dominant left hand; (f) the individual should avoid unprotected heights, moving machinery, and vibrations and avoid concentrated exposure to extreme temperatures and humidity; (g) he can occasionally climb, balance, stoop, crouch, and kneel, but never crawl or climb ladders, ropes, or scaffolds; (h) he requires nonproduction oriented, simple, and unskilled work with an SVP of one or two; (i) the work should be routine and repetitive with the individual not having to exercise judgment as a part of his job duties in terms of decision-making; (j) there should be no changes in the work environment, such as the claimant being given new types of tasks; and (k) as the individual learns best by demonstration, the work should require only very simple, basic reading, writing, and math.  (TR16-19).

The ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from November 22, 1988, the alleged onset of disability, through June 15, 2011, the date of the ALJ's decision because there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (TR 19-21).

## VI.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions.  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.
197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the
administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th
Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed,
even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d
1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.
*Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## B.      Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step
sequential analysis. In the first four steps, Plaintiff was required to show that:

1.  he was not presently engaged in substantial gainful employment; and
2.  he suffered from a severe impairment; and
3.  the impairment met or was medically equal to a "listed impairment;" or
4.  he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing
his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age,
education and past work experience to determine if he could perform other work. If he could not,
he would be deemed disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the
burden of proof only on "the fifth step, proving that there is work available in the economy that the
claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make
a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to
perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.

12

1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.   Analysis**

Plaintiff moves for a sentence four remand on the basis that the ALJ's decision denying his benefits is not supported by substantial evidence. Plaintiff argues that the ALJ's credibility finding was flawed, she erred in rejecting the opinions of Dr. Pestrue, Mr. Hardy and Mr. Troester, and she posed a hypothetical question to the VE that did not adequately account for findings of moderate restrictions in concentration, persistence, or pace.

*1.    Assessment of Plaintiff's Credibility*

The undersigned will first address Plaintiff's claim that the ALJ failed to properly assess the statements of Plaintiff concerning the intensity, persistence, and limiting effects of his symptoms. Plaintiff contends that because his statements were forthright and honest, and because he came up with evidence that was to some extent contrary to his position, it was unwarranted for the ALJ to base her decision in any way on a lack of credibility relative to the claimant.

The ALJ's conclusions regarding credibility should be accorded deference and should not be discarded lightly because the ALJ has the opportunity to observe the demeanor of the witness. *See Casey v. Sec'y of Health & Human Servs,* 987 F.2d 1230, 1234 (6th Cir. 1993). A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is

13

the degree to which the statements can be believed and accepted as true.  When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

. . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's

Statements, 61 Fed. Reg. 34483, 34485-86 (1996).  The assessment must be based on a consideration

of all of the evidence in the case record, including

Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's

Statements, 61 Fed. Reg. at 34486.

Here, the ALJ reviewed the evidence, including Plaintiff's assessment that he does not work

quickly because of his left hand deformity and because he has problems learning jobs.  The ALJ

found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his

symptoms were not credible to the extent they were inconsistent with the RFC.  The ALJ discussed

evidence showing that Plaintiff worked consistently throughout the years, sometimes in excess of

forty hours per week.  Additionally, the ALJ noted that Plaintiff had been fired from a few of his

jobs, but he had also chosen to end some of his jobs himself and had  quit certain jobs for various

reasons.  The record does not show that Plaintiff has been counseled by his current employer about

working too slowly.

The ALJ addressed Plaintiff's testimony that his work was slowed because of his left arm,

and she recognized that his left arm was two inches shorter than his right arm with diminished dexterity.  Yet the ALJ noted evidence that showed that despite his limitations Plaintiff was able to use his left upper extremity for manipulative tasks, pushing, pulling, and grasping, and he was able to pick up a coin, button clothing, and open a door.  The ALJ balanced evidence of Plaintiff's learning disability against his testimony that he reads the sports page of the newspaper daily, and he spends time on the computer each day either shopping for cars on Craigslist or accessing Facebook. In addition, the ALJ considered the opinion of Dr. Brady that showed that Plaintiff could perform simple and complex tasks, maintain concentration, and deal with normal workplace stressors.  The ALJ then opined that she accounted for Plaintiff's limitations in the RFC by limiting the use of his left upper extremity.  She also specifically crafted the RFC to limit Plaintiff to simple, unskilled, nonproduction work that is routine and repetitive and does not require Plaintiff to exercise judgment or make decisions.  Additionally, she crafted the RFC to require that there be no changes in the work environment such as Plaintiff being given new tasks, and only very simple, basic reading, writing, and math with the understanding that Plaintiff learns best by demonstration.

The undersigned finds that Plaintiff has not shown that the ALJ's assessment of Plaintiff's credibility was flawed.  The ALJ's credibility assessment should not be disturbed.

2.    *Assessment of the Medical and Non-Medical Opinions*

Next, Plaintiff contends that the ALJ erred in attributing only moderate weight to the opinion of Dr. Pestrue and in dismissing the opinions of Mr. Troester and Paul Hardy.  Plaintiff contends that the ALJ cherry picked portions of Dr. Pestrue's opinion and refused to accept the doctor's findings relative to Plaintiff's marked limitations in concentration and ability to complete a regular workday.  Plaintiff also strongly disagrees with the ALJ's treatment of Mr. Troester and Mr. Hardy's opinions

since these individuals had a long history with Plaintiff and were well aware of his abilities and limitations.

It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). It is equally as well-settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).

Opinions from sources that are not considered "acceptable medical sources" are important in assessing the severity of an individual's impairments and the impact those impairments have on

16

the individual's ability to function.  20 C.F.R. §§ 404.1513(d); 416.913(d); SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  SSR 06–3p clarifies that other source opinions "may be based on special knowledge of the individual" and may be important sources of information in determining the severity of the impairments and how the impairments affect the individual's functional capabilities.  SSR 06–3p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

The ALJ considered Dr. Pestrue's opinion and attributed moderate weight to the doctor's conclusions, finding that the opinion was not entirely consistent with the medical evidence of record.  Specifically, the ALJ took into account the doctor's assessment of Plaintiff's reading difficulties, but she did not accept Dr. Pestrue's conclusion that Plaintiff had marked deficits in his ability to maintain concentration and attention for extended periods and in his ability to complete a normal workday and workweek and perform at a consistent pace without an unreasonable number and length of rest periods.  Instead, the ALJ found that Plaintiff had moderate deficits with regard to concentration, persistence, or pace.  The ALJ based her decision on medical evidence from two different medical sources that stated that Plaintiff's ability to maintain concentration is good and Plaintiff had no problems with his concentration.

The ALJ noted that she considered the evidence of record.  The evidence shows that Plaintiff spends the majority of his off-working hours watching television with no stated difficulty concentrating on the shows he watches.  The evidence shows that Plaintiff uses a computer every day to access the social networking website Facebook.  He testified that he spends time perusing Craigslist for cars or car parts that his friends might be interested in purchasing.  Plaintiff reports that he reads the newspaper every day.  The evidence also shows that he is able to juggle several jobs at the same time, sometimes working from ten in the morning to six at night cleaning

17

limousines before or after he completed his responsibilities at the bar.  Plaintiff testified that he was able at times to independently monitor and assess whether he needed to restock the ice supply or beer supply at the bar.  Furthermore, the evidence shows that Plaintiff worked at his current jobs for a long period of time with no evidence that he was ever counseled or disciplined for being unable to maintain concentration or pace.

Plaintiff contends that Dr. Pestrue's opinion offers evidence to show that he meets the criteria of Listing 12.05, mental retardation.  As to this argument, the ALJ concluded that the requirements of paragraph A were not met because Plaintiff was able to complete his activities of daily living and therefore was not dependent upon others for personal needs.  She concluded that the requirements of paragraph B were not met because Plaintiff did not have a valid verbal, performance, or full scale IQ of 59 or less.  The ALJ found that the requirements of paragraph C were not met because Plaintiff did not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment posing an additional and significant work-related limitation.  The ALJ noted that testing performed by Dr. Pestrue showed that Plaintiff scored a 68 on the verbal comprehension index and full scale IQ and fell within the mental retardation classification.  However, the ALJ attributed more weight to the IQ testing completed while Plaintiff was in high school.  Plaintiff does not cite to authority to show that the ALJ should have attributed more weight to the later IQ tests. The criteria for Listing 12.05 requires that there be mental retardation defined as significantly subaverage general intellectual functioning with deficits in adaptive functioning that manifested before the age of 22. Intelligence testing performed while Plaintiff was in high school determined that he was learning disabled and fell within the slow learner classification, not that he was mentally retarded.  The intelligence testing performed before the age of 22 also did not reveal that Plaintiff

had a verbal or full scale IQ of 60 through 70.  As for the criteria of paragraph D, the ALJ found that Plaintiff did not meet this requirement in part because he did not have a marked limitation in at least two of the listed areas.  The undersigned concludes that the ALJ did not err in declining to rely on Dr. Pestrue's opinion as evidence that Plaintiff satisfied Listing 12.05.

Next, as to the opinions of Mr. Troester and Mr. Hardy, the ALJ considered the opinions and afforded them little weight.  The ALJ rightly noted that conclusions made in the opinions that Plaintiff would be eligible for social security disability benefits were reserved to the Commissioner.  She also correctly noted that the conclusions that Plaintiff would need someone mentoring or supervising him at all times was not consistent with medical evidence or with Plaintiff's work history.

The undersigned finds that the ALJ gave good reasons for the weight she attributed to the opinions of Dr. Pestrue, Mr. Troester, and Mr. Hardy.  The ALJ's assessment of these opinions is supported by substantial evidence and is not erroneous in this case.

*3.    Accurate Hypothetical*

Next, Plaintiff argues that the ALJ posed a hypothetical question to the VE that did not adequately account for findings of moderate difficulties in concentration, persistence, or pace.  The ALJ is required to present a hypothetical question that includes only those limitations she finds to be credible.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993).  The hypothetical must "accurately portray[] [the plaintiff's] individual physical and mental impairments" in order for the VE's response to constitute substantial evidence.  *Varley*, 820 F.2d at 779 (citations omitted).   When the ALJ makes a finding that a claimant has moderate limitations with concentration, persistence or pace, "but does not specifically include that limitation in the

19

hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's ... limitations." *Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009). In other words, if the ALJ goes beyond the label a psychologist gives to a person in order " 'to develop a complete and accurate assessment' of the patient's mental impairment and possible work opportunities, a VE's reliance on that description is substantial evidence supporting a denial of benefits." *Adams v. Comm'r*, No. 10-10022, 2011 WL 63495, at *2 (E.D. Mich. Jan. 6, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001)). The court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision. *Id.  See also Bohn-Morton v. Comm'r*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005); *Berkowski v. Comm'r*, 652 F.Supp.2d 846, 859-60 (E.D. Mich. 2009).

Plaintiff argues that under *Bankston v. Comm'r,* 127 F.Supp.2d 820 (E.D.Mich. 2000), an impairment listed as "moderate" is equivalent to "often" which is defined as occurring fifty percent of the time. The undersigned draws Plaintiff's attention to the fact that courts have rejected the very argument that Plaintiff now proposes. *See Evitts v. Comm'r*, No. 11-14609, 2012 WL 4470680, at *10-11 (E.D. Mich. June 29, 2012) (citing cases); *Alhin v. Comm'r*, No. 07-12352, 2008 WL 2743954 (E.D. Mich. July 11, 2008).

Here, the ALJ asked the VE to consider an individual who was limited to simple unskilled jobs that were nonproduction oriented, routine and repetitive, with no need for the individual to exercise judgment in terms of decision-making, no changes in the workplace environment such as the individual being given new types of tasks, and only very simple work requiring only basic reading, writing, and math as the individual learns best by demonstration. The ALJ considered the

20

evidence before her and crafted a hypothetical that accurately portrayed Plaintiff's limitations.  The undersigned suggests that the ALJ's hypothetical question accurately accounts for Plaintiff's limitations.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 23, 2013          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel

of Record on this date.

Dated: January 23, 2013                    <u>s/ Lisa C. Bartlett</u>
                                           Case Manager